# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ROGER RODEMS on behalf of** ) | |
| **ROY RODEMS,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| vs. ) | Case No. 5:12-cv-03543-JHE |
| ) | |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendants** ) | |

## MEMORANDUM OPINION

Plaintiff Roger Rodems ("Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Roy Rodems' ("Rodems" or "Claimant") application for Disability Insurance Benefits ("DIB").

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on December 17, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above.

Plaintiff timely pursued and exhausted his administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the decision of the Commissioner is REVERSED and the action REMANDED for further proceedings.

### MOTION TO DISMISS AND STANDING

Before reaching the merits of Plaintiff's case, the court must address Defendant's motion to dismiss for lack of standing. (Doc. 9). The Social Security Act ("Act") and corresponding regulations limit the individuals who can collect underpaid DIB owed to a deceased claimant. *See* 42 U.S.C. §§ 404(d); 20 C.F.R. § 404.503(b) (2012). A claim for DIB is made pursuant to Title II of the Act. *See* 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.1, 404.2(a)(2). If a claimant who is owed DIB is deceased, Title II and the corresponding regulations specify a hierarchy of living persons who may receive distribution of the underpayment of benefits. *See* 42 U.S.C. § 404(d); 20 C.F.R. § 404.503(b). Generally, the hierarchy proceeds in the order of a surviving spouse, children, parents, and then the legal representative of the estate of the deceased claimant. *See* 20 C.F.R. § 404.503(b). The Regulations further provide "[t]he term legal representative . . . may also include an individual, institution or organization acting on behalf of an unadministered estate, provided that such

person can give the Administrative good acquittance."[2]  20 C.F.R. § 404.503(d). Defendant argues only those identified in 20 C.F.R. § 404.503 have a right to collect underpayment.

20 C.F.R. § 404.504(d) expressly identifies "an individual . . . acting on behalf of an unadministered estate" as a person entitled to collect underpayment, and Roger Rodems, Roy's brother, meets this requirement.  Roy Rodems died intestate and without the assets requiring someone to probate his estate.  Under Alabama law, when a person dies intestate and without a surviving spouse, his intestate estate passes "to the issue of the parents or either of them" . . . "[i]f there is no surviving issue or parent." ALA. CODE § 43-8-42.  If Roy were to have assets necessitating the probate of his estate, Roy's estate would pass to "the issue of his parents," or his sibling(s), because he does not have a surviving spouse or children.  As the person entitled to any inheritance from Roy, Roger Rodems may act on behalf of the unadministered (intestate) estate in this action for DIB.  *See Cunningham v. Astrue*, 360 Fed. App'x. 606, 611 (6th Cir. 2010) (holding claimant's surviving siblings would be substituted as the plaintiffs following claimant's death).  Defendant's motion to dismiss for lack of standing (Doc. 9) is DENIED.

---

[2] "A person is considered to give the Administration good acquittance when payment to that person will release the Administration from further liability for such payment."  20 C.F.R. § 404.503(e).  Defendant does not challenge Plaintiff's ability to provide good acquittance.

## FACTUAL AND PROCEDURAL HISTORY

Roy Rodems was a 49-year-old male at the time of his hearing before the Administrative Law Judge ("ALJ") on February 7, 2011.  At 49 years of age, Rodems was considered a "younger person" according to 20 C.F.R. §§ 404.1563(c) and 416.963(c).  Rodems had at least a high school education, and his past relevant work experience included work as a mechanic, an automotive service manager, an instructor/technical trainer, and a warehouse worker.  (Tr. 43, 54).

Rodems filed an application for DIB on February 6, 2009, alleging an initial onset date of October 20, 2007.  (Tr. 64, 77-80).  The State Agency denied Rodems' application, and he requested a hearing before an ALJ.  (Tr. 73-74).  After a hearing, the ALJ denied Rodems' claim on April 8, 2011.  (Tr. 35).  Rodems sought review by the Appeals Counsel, but it declined to grant review on August 10, 2012.  (Tr. 1-4).  On that day, the ALJ's decision became the final decision of the Commission. In the interim, on April 6, 2012, Rodems passed away; and his brother, Roger Rodems (or "Plaintiff") was substituted as standing party (Tr. 7-9, 168).  Having exhausted all administrative remedies, Plaintiff initiated this action.

## STANDARD OF REVIEW[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Rodems met the insured status requirement of the Social Security Act through December 31, 2012,[5] and that Rodems had not engaged in substantial gainful employment since October 20, 2007, the alleged onset date. (Tr. 27).  At Step Two, the ALJ found Rodems had the following severe impairments: remote history of traumatic brain injury (two motor vehicle accidents in 1982 and a bicycle wreck), degenerative disc disease, degenerative joint disease, irritable bowel syndrome, migraines, gastroesophageal reflux disease, chronic sinusitis, carpal tunnel syndrome, chronic pain disorder associated with pain factors; depression, and anxiety. (*Id.*).  At Step Three, the ALJ found Rodems did not have an impairment or combination of impairments that met or equaled one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix I.  (Tr. 28).

Before proceeding to Step Four, the ALJ determined Rodems' residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Rodems was capable of performing light work, with normal breaks, as defined in 20 C.F.R. § 404.1567(b), subject to the following specific limitations:  lift up to twenty pounds occasionally; lift or carry (or both) up to ten pounds frequently; sit for approximately six hours of an eight-hour workday; stand or walk for approximately six hours per

---

[5] Rodems died on April 6, 2012.

eight hour workday; push or pull (upper extremities) bilaterally, occasionally; operate foot controls (lower extremities) bilaterally, occasionally; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance; occasionally stoop; never crouch, kneel, or crawl; no repetitive rotation, flexion, or extension of the neck; avoid even moderate exposure to extreme cold, excessive vibration, exposure to environmental irritants (e.g., fumes, odors, dusts, gases), poorly ventilated areas, and chemicals; avoid all exposure to hazards (e.g., use of moving machinery, exposure to unprotected heights); limited to occupations which do not involve exposure to direct sunlight or exposure to bright, flashing lights (does not include neon lights in the workplace); work is limited to simple, routine, repetitive tasks, performed in a work environment free from fast-paced production requirements, involving only simple, work-related decisions, with few, if any, workplace changes, performed at a work station separate and apart from co-workers, with a flexible work schedule (can miss 1-2 days per month), with casual, supportive, non-confrontational supervision; with only occasional interaction with the public; and can be around co-workers throughout the day, but with only occasional interaction with co-workers.  (Tr. 29-30).

At Step Four, the ALJ determined Rodems was unable to perform any past relevant work.  (Tr. 34).  At Step Five, the ALJ determined, based on Rodems' age,

education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy Rodems could perform. (*Id.*). Therefore, the ALJ denied Rodems' claim. (Tr. 35).

## ANALYSIS

### I. Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Plaintiff specifically contends the ALJ's decision should be reversed and remanded because the ALJ did not apply the proper standards when: (1) the ALJ failed to state the weight given to the Veterans' Administration ("VA") opinion Rodems was "disabled" and (2) the ALJ accorded undue weight to the opinion of the state agency non-examining physician.

## II. Weight Given to the Veterans' Administration's Disability Rating

Plaintiff asserts the ALJ failed to state the weight given to the disability ratings the VA assigned to Rodems. "A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight." *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); [6] *see Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984).[7]  An ALJ is obligated to consider a disability rating assigned by another agency, not just the medical records behind the rating, but there is no obligation to agree with the rating. *Garcia v. Colvin*, No. 6:12-cv-0558-WMA, 2013 WL 6635646, at *2 (N.D. Ala. Dec. 17, 2013).

In his decision, the ALJ recognized "[a]t the hearing, the claimant testified that he is receiving $1,400.000 per month from the veterans' administration (VA) secondary to an 80% disability." (Tr. 31). The ALJ also noted "[m]edical opinions

---

[6] In *Bonner v. City of Pritchard*, the Eleventh Circuit adopted all decisions handed down by the Fifth Circuit prior to close of business on September 30, 1981 as binding precedent. 661 F.2d 1206, 1207 (11th Cir. 1981).

[7] 20 C.F.R. § 404.1504, "Determinations by other organizations and agencies" states:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

from VAMC, regarding the claimant's physical/mental functioning, are given substantial weight since they derive from a treating source." (Tr. 33). The ALJ did not, however, directly address the VA's disability determination. (*See* tr. 27-35).

Contrary to Rodems' hearing testimony, Birmingham VA Medical Center ("VAMC") records indicate a service connected disability rating of 60%. (Tr. 295). The records also indicate the following service connected disability ratings: limited motion in arm – 20%; migraine headaches – 0%; traumatic arthritis – 10%; traumatic arthritis – 10%; degenerative arthritis of the spine – 20%; spondylolisthesis or segmental instability -10%. (*Id.*). This evidence should have been considered and should have been accorded "great weight." *See Brady*, 724 F.2d at 921; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (an ALJ must "state specifically the weight accorded to each item of evidence and why he reached that decision.")

The ALJ referenced Rodems' testimony, but not the VAMC disability rating records. The ALJ noted Rodems' testimony regarding pain, difficulty holding objects, and his other daily activities. The VA disability rating was not mentioned again. The ALJ's opinion reveals no express consideration of the VA disability rating or a determination it was entitled to great weight.

Although the Eleventh Circuit has recognized an ALJ can *implicitly* find a VA disability rating was entitled to great weight, *see Kemp v. Astrue*, 308 Fed. App'x.

423, 426 (11th Cir. 2009), no such finding can be implied here.  In *Kemp*, although the ALJ did not specifically state he gave great weight to the VA's disability ratings, he continuously referred to the VA's evaluations and disability ratings in his opinion. *See id*.  The ALJ in *Kemp* also gave specific reasons why one of the VA's disability ratings did not qualify as a severe impairment.  *Id*.  Here, the ALJ did not even mention Rodem's VA disability ratings (other than referring to Rodems' testimony), much less the weight he accorded them.  This suggests the ALJ did not separately consider the VA disability rating, but simply included it as a list of relevant testimony by the claimant.  This isolated reference is distinguishable from the "continuous" references in *Kemp*.  The ALJ's single reference is more factually similar to *Durham v. Astrue*, in which the court held a single reference to a VA disability rating could support an implied finding of weight *if* the ALJ discussed reasons for according the rating little weight (but did not).  No. 4:08-cv-839-SRW, 2010 WL 3825617 (M.D. Ala. Sept. 24, 2010).  As noted, there are no reasons in the ALJ's opinion.

      Contrary to the Eleventh Circuit's dictate in *Brady* and *Cowart*, the ALJ made no finding, implicit or otherwise, as to the weight of the VA disability rating.  Accordingly, the decision of the Commissioner is due to be reversed and remanded.

### III. Weight Accorded State Agency's Non-Examining Physician

Plaintiff next argues the ALJ's decision is not supported by substantial evidence because the ALJ gave "substantial weight" to the opinion of a non-examining, reviewing state agency physician. (Doc. 6 at 8). Specifically, Plaintiff argues the ALJ erred in his assessment of Rodems' RFC by according the opinion of a non-examining physician, Dr. Heilpern, "great weight." (*Id.*).[8] The weight given Dr. Heilpern's opinion is significant because he opined Rodems was able to "perform light work" and thus was not disabled. (Tr. 33). Notably, Dr. Heilpern's opinion appears to be inconsistent with the VA's disability rating.

The ALJ also stated Dr. Heilpern's opinion was "consistent with the majority of the medical evidence" and supported the ALJ's RFC assessment that Rodems was able to perform light work. (*Id.*). The ALJ did not specify which pieces of the medical evidence Dr. Heilpern's opinion was not consistent with and whether Dr. Heilpern's assessment was consistent with medical opinions from the VAMC.

In determining the weight to give the opinion of a reviewing, non-examining physician, the Eleventh Circuit has explained:

> The opinion of a reviewing, non-examining physician, when contrary to those of examining physicians, are

---

[8] The ALJ also gave the opinions of Dr. Rogers, a non-examining consulting physician, "significant weight since they are consistent with the bulk of the medical evidence." (Tr. 33).

> entitled to little weight. *Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 2008). But good cause may arise when a treating physician's report is wholly conclusory or not accompanied by objective medical evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam).

Thus, the ALJ may only give "substantial weight" to the medical opinion of a non-examining physician if contrary to the medical opinion of the treating physician if "good cause exists for not heeding the treating physician's diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). When elevating the opinion of a non-examining physician above a treating physician, the ALJ must clearly articulate his reasons, and the "failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

If an ALJ shows good cause, then they may consider other sources, such as medical records and the opinion of reviewing, non-examining physicians. *Lamb*, 847 F.2d at 703. However, if the ALJ does not show good cause and they give less or no weight to the opinion of the treating physician, then their opinion must be reversed. *Lewis*, 125 F.3d at 1440.

It is unclear if Dr. Heilpern's opinion contradicts the opinion of Plaintiff's treating physicians at the VAMC. The ALJ specifically noted the following VAMC records supported his decision and were presumably consistent with Dr. Heilpern's

opinion: (1) x-rays of the claimant conducted by VAMC, (Tr. 31); (2) EMG/NCS reports written by VAMC, (Tr. 32); and (3) a global assessment functioning ("GAF") exam conducted by VAMC, (Tr. 33). These records were "further noted" by the VAMC in assessing that Rodems was "functionally independent" and did not need any "special assistance/accommodation at home." (*Id.*).

The regulations draw a distinction between medical records and medical opinions:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant]'s impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Here, Claimant's treating source is the VAMC. The ALJ should only have considered opinions contrary to those of the VAMC doctors if he established good cause to do so. This is the case even if the medical records of a treating source ultimately support the opinion of a physician whose opinion is given great weight by the ALJ. Without the showing of good cause, the ALJ could not look beyond the medical opinion of the treating source.

Because the ALJ did not articulate "good cause," his decision to accord the opinions of Dr. Rogers and Dr. Heilpern "substantial/great weight" is reversible error.

## CONCLUSION

Based on the evaluation of the evidence in the record and the submission of the parties, the court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be reversed and remanded. A separate order will be entered.

DONE this 27th day of February, 2014.

*[signature]*

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE